EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pueblo de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>Efraín Ferrer Maldonado<br><br>    Recurrido | 2019 TSPR 43<br><br>201 DPR \_\_\_\_<br><br>Certiorari |

Número del Caso:  CC-2017-478


Fecha: 7 de marzo de 2019


Tribunal de Apelaciones:

        Región Judicial de Aguadilla y Arecibo, Panel XI


Oficina del Procurador General:

        Lcdo. Luis Román Negrón
        Procurador General

        Lcdo. Isaías Sánchez Báez
        Subprocurador General

        Lcdo. Andrés A. Pérez Correa
        Procurador General Auxiliar


Abogado de la parte recurrida:

        Lcdo. Fredy Rivera Avilés


Materia: Aplicación Retroactiva de las enmiendas introducidas a la Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores mediante la Ley Núm. 243-2011, no violan la prohibición constitucional en contra de la leyes *expost facto*.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Pueblo de Puerto Rico | |
| Peticionario | |
| v. | **Núm.** CC-2017-0478 |
| Efraín Ferrer Maldonado | |
| Recurrido | |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 7 de marzo de 2019

En esta ocasión, nos corresponde resolver si la aplicación retroactiva de la Ley Núm. 266 del 9 de septiembre de 2004, *Ley del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores*, según enmendada por la Ley Núm. 243 del 14 de diciembre de 2011, constituye una violación a la prohibición constitucional en contra de las leyes *ex post facto*. Esto, a su vez, nos permitirá delinear el alcance de lo resuelto por este Foro en *Pueblo v. Hernández García*, 186 DPR 656 (2012).

**I.**

El 27 de agosto de 2003, el Sr. Efraín Ferrer Maldonado (recurrido) realizó una alegación de culpabilidad, según acordada con el Ministerio Público, y fue convicto por tres infracciones al Artículo 105 (actos lascivos sin minoridad) y dos infracciones al Artículo 99 (tentativa de violación)

del Código Penal de 1974.[1] Como resultado, el Tribunal de Primera Instancia le impuso una pena de quince años y medio (15 1/2) a ser cumplida bajo el régimen de libertad a prueba y ordenó incluirlo en el Registro de Ofensores Sexuales (Registro).

El 28 de junio de 2016, el señor Ferrer Maldonado presentó ante el Tribunal de Primera Instancia una moción solicitando que se eliminara su nombre del Registro. En ésta alegó que, conforme a lo dispuesto en el Artículo 5 de la Ley Núm. 28 del 1 de julio de 1997, la cual creó el *Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores*, 4 LPRA 535 *et seq.* (Ley Núm. 28-1997), ya había transcurrido el término de diez (10) años requerido por ley para que su información permaneciera en el Registro, aunque aún no había cumplido la totalidad de su condena.

El Ministerio Público presentó una moción en oposición en la cual señaló que el Registro es una herramienta del Estado cuyo propósito es ofrecer una protección a la ciudadanía y, por ende, dicho mecanismo no se debe considerar como un castigo. Asimismo, sostuvo que la Ley Núm. 28-1997 había sido derogada y que actualmente rige en nuestro ordenamiento la Ley Núm. 266 del 9 de septiembre de 2004, *Ley del Registro de Personas Convictas por Delitos Sexuales*

---

[1] Según surge del expediente, en la vista celebrada el 27 de agosto de 2003, "[e]l Tribunal señaló que en este caso se llegó a un pre-acuerdo entre las partes, el cual fue transmitido por el Fiscal a los progenitores de la menor y fue avalado por el Tribunal". *Minuta del 27 de agosto de 2003*, Petición de *certiorari*, Anejo I, en la pág. 17.

*y Abuso contra Menores*, 4 LPRA 535 *et seq.* (Ley Núm. 266-2004), la cual, a su vez, fue enmendada sustancialmente por la Ley Núm. 243 del 14 de diciembre del 2011 (Ley Núm. 243-2011). El Ministerio Público arguyó que conforme a la ley vigente se había establecido distintas clasificaciones de ofensor sexual, de acuerdo con el delito cometido, y que el señor Ferrer Maldonado pertenece a una clasificación que no le correspondería ser eliminado del Registro, a saber, un Ofensor Sexual Tipo III.[2] El Ofensor Sexual Tipo III, en esencia, es una persona que resultó convicta por los delitos, su tentativa o conspiración, de: violación, seducción, sodomía, actos lascivos a menores de edad, incesto, secuestro o robo de menores de edad, conforme al Código Penal de 1974; actos lascivos contra menores de trece (13) años; y/o secuestro de menores de edad. Véase 4 LPRA sec. 536(10).

Así las cosas, y tras considerar los argumentos de las partes, el 2 de agosto de 2016, el foro primario denegó la solicitud del señor Ferrer Maldonado. Inconforme, éste presentó una moción de reconsideración, la cual también fue declarada *no ha lugar*.

Aún insatisfecho, el 30 de septiembre de 2016, el señor Ferrer Maldonado acudió, mediante el recurso de *certiorari*, ante el Tribunal de Apelaciones. En esencia, argumentó que

---

[2] En apoyo a esto, el Ministerio Público señaló además que, "[e]l peticionario resultó convicto de varios delitos de índole sexual contra unas niñas menores de edad[,] las cuales eran nietas de su ex compañera consensual". *Moción en oposición a eliminación del Registro de Ofensores Sexuales*, Petición de *certiorari*, Anejo I, en la pág. 24.

mantener su información en el Registro, luego de haber transcurrido el término establecido en la ley vigente al momento de dictarse su sentencia, constituía una violación a la prohibición constitucional en contra de la aplicación de leyes *ex post facto*. El 31 de marzo de 2017, el foro apelativo intermedio emitió una sentencia revocando la determinación del foro primario y ordenó excluir la información del señor Ferrer Maldonado del Registro. Dicho foro resolvió que, a pesar del carácter civil de la ley que habilita el Registro, ésta cae dentro de aquellas leyes que agravan un delito o hacen más onerosa la forma de cumplir la pena impuesta, conforme a la doctrina reiterada en *González Fuentes v. ELA*, 167 DPR 400 (2006) sobre la prohibición en torno a la aplicación de leyes *ex post facto* contenida en nuestra Constitución. Así, concluyó que la imposición retroactiva de la Ley Núm. 266-2004, según enmendada, resultaría en una pena más gravosa para el señor Ferrer Maldonado, lo cual tendría "efectos adversos para su vida". *Sentencia del 31 de marzo de 2017*, KLCE201601818, Apéndice de la petición de *certiorari*, en la pág. 58.

El Ministerio Público presentó una oportuna moción de reconsideración en la que arguyó que la ley que rige el Registro no es de índole punitiva ni de carácter penal; por ende, no puede ser considerada como una ley penal *ex post facto*. Más aún, el Estado precisó que cuando entró en vigor la Ley Núm. 266-2004, e incluso las enmiendas introducidas por la Ley Núm. 243-2011, el señor Ferrer Maldonado aún no

había cumplido su condena. El foro apelativo intermedio, sin embargo, declaró *no ha lugar* dicha solicitud.

El 9 de junio de 2017, el Ministerio Público, en desacuerdo con la determinación del Tribunal de Apelaciones, presentó ante este Tribunal un recurso de *certiorari* en el que arguyó que dicho foro había errado al ordenar la eliminación del Registro la información del señor Ferrer Maldonado; máxime cuando reconoció en su sentencia que éste, conforme a la Ley Núm. 266-2004, según enmendada, tendría que permanecer inscrito de por vida. El 1 de diciembre de 2017, este Tribunal expidió el recurso presentado. Tanto el Ministerio Público, como el señor Ferrer Maldonado presentaron sus respectivos alegatos y reiteraron los mismos argumentos esbozados ante los foros recurridos.

Con el beneficio de los escritos de las partes, nos encontramos en posición de resolver.

## II.

Para disponer de la presente controversia debemos analizar el desarrollo legislativo de la normativa en Puerto Rico que creó el Registro de Ofensores Sexuales, así como la jurisprudencia interpretativa de este Tribunal en dicha materia. De otra parte, corresponde determinar si la aplicación retroactiva de la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011, atenta contra la protección constitucional en torno a la prohibición de leyes *ex post facto* en materia de Derecho Penal.

**A.**

La Ley Núm. 28-1997, que creó el *Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores*, se aprobó para cumplir con la ley federal, *Jacob Watterling Crimes Against Children and Sexually Violent Offender Registration Program*, 42 USC secs. 14071 *et seq.* (conocida como la *Megan's Law*), la cual requirió a los estados, y a Puerto Rico, adoptar una legislación para que personas convictas por ciertos delitos de naturaleza sexual y de abuso contra menores de edad tuvieran que inscribirse en un registro público.[3] *Exposición de Motivos*, Ley Núm. 28-1997. El propósito del Registro, según reconocieron tanto la ley federal como estatal antes discutidos, era uno **no punitivo** y buscaba **mantener informadas** a las autoridades gubernamentales y la ciudadanía sobre el paradero de aquellas personas convictas y que luego se reintegraban a la libre comunidad. Art. 1 de la Ley Núm. 28-1997, 4 LPRA sec. 535 (Ed. 2003) (Propósito).

---

[3] Conviene recordar que esta legislación federal surgió como una reacción a los sucesos ocurridos en una comunidad del estado de Nueva Jersey para el 1994. El Sr. Jesse Timmendequas violó y asesinó a Megan Kanka, una niña de siete (7) años que era su vecina. Al momento de su asesinato, ya el señor Timmendequas contaba con dos (2) convicciones previas por delitos sexuales contra menores. Este terrible crimen acaparó la atención de los estadounidenses, en particular porque los padres de la pequeña Megan iniciaron una campaña para presionar a la legislatura de Nueva Jersey a que aprobara una ley para que los ciudadanos se les notificara de la presencia de ofensores sexuales en su comunidad. Tras la aprobación de la ley en Nueva Jersey, el Congreso de los Estados Unidos aprobó la mencionada ley federal.

Dicho cuerpo normativo ordenaba la inscripción en el Registro de las personas que fueran convictas por delitos, o su tentativa, de violación y actos lascivos o impúdicos, entre otros, cuando la víctima fuese menor de dieciocho (18) años, conforme al derogado Código Penal de Puerto Rico de 1974. Art. 3(a) de la Ley Núm. 28-1997, 4 LPRA sec. 535a (Ed. 2003). El Art. 5 de la ley disponía que la persona convicta se mantendría "en el Registro por un período mínimo de diez (10) años desde que la persona cumpl[iera] la sentencia de reclusión, desde que comenz[ase] a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que [fuese] liberada bajo palabra". 4 LPRA sec. 535c (Ed. 2003). Por tanto, una vez transcurriera dicho término, el nombre y los datos de la persona serían eliminados del Registro. *Id.*

No obstante, y como se mencionó anteriormente, el 9 de septiembre de 2004, la Ley Núm. 28-1997 quedó derogada por la Ley Núm. 266-2004. El nuevo estatuto dispuso que el Estado, en su función de *parens patriae*, tenía el deber de "continuar ampliando el marco de acción y adoptar un enfoque de carácter preventivo" mediante la "recopilación y divulgación de información relativa a las personas convictas de delitos sexuales y abuso contra menores". *Exposición de Motivos*, Ley Núm. 266-2004. Asimismo, la ley dispuso que "**no tiene un propósito punitivo** [sino que] es un medio para garantizar la seguridad, protección y bienestar general de los sectores más vulnerables y merecedores de protección de

nuestra sociedad". Art. 1 de la Ley Núm. 266-2004, 4 LPRA sec. 536 (Ed. 2010) (Propósito) (énfasis suplido).

En cuanto a la aplicación de esta ley para las personas obligadas a registrarse bajo la Ley Núm. 28-1997, la Ley Núm. 266-2004 dispuso que "quedar[ían] registradas las personas que al momento de la aprobación de [la] ley, tenían la obligación de estar registrados bajo la [Ley Núm. 28-1997]". Art. 3(d) de la Ley Núm. 266-2004, 4 LPRA 536a(d) (Ed. 2010). Asimismo, establecía que "no tendr[ían] la obligación de registrarse las personas que, al momento de aprobarse [la] ley, hayan extinguido la pena impuesta por la comisión de alguno de los delitos enumerados". *Id.* De otra parte, en cuanto al término por el cual la información de la persona convicta se mantendría en el Registro, ésta decretaba que sería "por un periodo mínimo de diez (10) años desde que se cumplió la sentencia impuesta". Art. 5 de la Ley Núm. 266-2004, 4 LPRA 536c (Ed. 2010). A diferencia de su antecesora, esta nueva ley aplicaba desde que se extinguía la sentencia y no hacía una distinción, en cuanto al cómputo para el término de los diez (10) años de inscripción en el Registro, entre si la persona convicta cumplía su sentencia en la libre comunidad, bajo algún beneficio de sentencia suspendida o, por el contrario, estaba recluida en una institución penitenciaria.

Posteriormente, se aprobó la Ley Núm. 243-2011 con el propósito de enmendar distintos aspectos de la Ley Núm. 266-2004. En cuanto a las razones de política pública para estas

enmiendas, la Asamblea Legislativa explicó que era necesario atemperar las disposiciones de la Ley Núm. 266-2004 a aquellas de su homóloga federal, la *Adam Walsh Child Protection and Safety Act of 2006*, también conocida como *Sex Offender Registration and Notification Act* (SORNA), 42 USC secs. 16901 *et seq.* Según la Exposición de Motivos de la Ley Núm. 243-2011, la ley federal SORNA constituyó "una revisión completa de los estándares [federales] para el registro y la notificación de los ofensores sexuales, designada para buscar fortalecer y aumentar la efectividad del registro para la seguridad del público". *Exposición de Motivos*, Ley Núm. 243-2011. Una vez más, la Asamblea Legislativa subrayó que "nuestro Registro, al igual que los Registros establecidos en todos los estados de los Estados Unidos, **no tiene un propósito punitivo**". *Id.* (énfasis suplido).

Entre las nuevas disposiciones establecidas, tras considerar los requisitos mínimos de la ley federal SORNA, se encuentran la creación de tres (3) clasificaciones para los ofensores sexuales de acuerdo con el delito sexual cometido. Bajo estas clasificaciones, el término mínimo para el Ofensor Sexual Tipo I conlleva permanecer en el Registro por quince (15) años, mientras que el Ofensor Sexual Tipo II tiene que estar inscrito durante veinticinco (25) años y el Ofensor Sexual Tipo III, durante toda la vida.[4] 4 LPRA sec.

---

[4] A manera de resumen, la ley clasifica como un *Ofensor Sexual Tipo I* a una persona que resulte convicta por los delitos, su tentativa o conspiración, de: restricción a la libertad cuando la víctima sea menor de edad; maltrato de menores; maltrato agravado conyugal; distribución o posesión

536c. Así pues, se eliminó el término uniforme de diez (10) años que contemplaba anteriormente la ley y se sustituyó por un término específico, según la gravedad de los delitos.

Un elemento significativo de las enmiendas a la Ley Núm. 266-2004, que resultaron de la Ley Núm. 243-2011, fue que restituyó el momento desde cuando se comenzaría a contar el término de inclusión de la persona en el Registro, según la sentencia impuesta. Mediante las enmiendas se volvió a hacer la distinción entre las personas que cumplen su sentencia en una institución correccional y aquellas que la cumplen en la libre comunidad. En cuanto a la primera, la ley dispone que el término comienza a correr "desde que el ofensor sexual sea excarcelado", mientras que, en la segunda, éste se computa "desde que se dicta la sentencia,

---

de material obsceno; y exposición deshonesta frente a un menor de edad. Véase 4 LPRA sec. 536(8). De otra parte, la ley clasifica como un *Ofensor Sexual Tipo II* a una persona que resulte convicta por los delitos, su tentativa o conspiración, de: actos lascivos o impúdicos contra menores de dieciocho (18) años; comercio de personas menores de edad; perversión de menores, conforme al Código Penal de 1974; producción y distribución de pornografía infantil; y agresión sexual si la víctima estuvo sometida a engaño o treta, tiene parentesco o existe una relación de superioridad con el ofensor. Además, quedan incluidos aquellos *Ofensores Sexuales Tipo I* convictos anteriormente de algún delito sexual. Véase 4 LPRA sec. 536(9). Por último, la ley clasifica como un *Ofensor Sexual Tipo III* a una persona que resulte convicta por los delitos, su tentativa o conspiración, de: violación, seducción, sodomía, actos lascivos a menores de edad, incestos, secuestro o robo de menores de edad, conforme al Código Penal de 1974; las modalidades de agresión sexual no mencionadas para los *Ofensores Sexuales Tipo II*; actos lascivos contra menores de trece (13) años; y secuestro de menores de edad. Además, quedan incluidos aquellos *Ofensores Sexuales Tipo II* convictos anteriormente de algún delito sexual. Véase 4 LPRA sec. 536(10).

resolución o determinación para participar de [los] programas [de libertad a prueba, libertad bajo palabra o programas de desvío, tratamiento o rehabilitación], y se notifique su inclusión al Registro". *Id.*

Por último, y en cuanto a la retroactividad de estas enmiendas, la ley **expresamente** dispone que -salvo los incisos (f) y (g) del artículo 4- "[l]as demás disposiciones podrán tener efecto retroactivo". Art. 15 de la Ley Núm. 243-2011, 4 LPRA sec. 536 (Vigencia). Los **incisos exceptuados** establecen la prohibición que tienen las personas inscritas en el Registro de establecer su residencia a quinientos (500) pies de una escuela o cuido de niños, y la obligación de la agencia concernida de notificar al ofensor sexual con relación a esa prohibición. *Id.* en la sec. 536b.[5]

**B.**

Este Tribunal ha tenido la oportunidad de analizar el alcance de la Ley Núm. 266-2004, según enmendada, en dos ocasiones recientes. Primero, en *Pueblo v. Hernández García*, 186 DPR 656 (2012), el señor Hernández García resultó convicto, tras una alegación de culpabilidad, por un delito

---

[5] La Ley Núm. 266-2004 fue enmendada nuevamente por la Ley Núm. 5 del 2 de febrero de 2015. Sin embargo, estas enmiendas sólo buscaban aumentar las jurisdicciones en las cuales se requiere el registro de personas convictas por delitos sexuales. En específico, la ley incluyó a las "tribus indígenas" reconocidas por el Gobierno federal. Esto, en esencia, se realizó para que Puerto Rico fuese acreedor de ciertos fondos federales. Véase *Exposición de Motivos*, Ley Núm. 5 del 2 de febrero de 2015. Dichas enmiendas en **nada** alteraron las disposiciones que hoy estamos analizando.

que, conforme a las enmiendas introducidas por la Ley Núm. 243-2011, no era una conducta constitutiva de abuso sexual. Además, para el momento en el cual solicitó la eliminación de su información en el Registro, éste ya había cumplido su condena de libertad a prueba y el caso había sido sobreseído por el foro primario. Así las cosas, aplicamos el principio de favorabilidad contenido en el Art. 9 del Código Penal, 33 LPRA sec. 4637 y resolvimos que procedía eliminar la información del peticionario dado que ya no se requería su inscripción, según la ley vigente. *Id.* en las págs. 680-81.[6]

De igual forma, en esa decisión avalamos lo dispuesto por la Asamblea Legislativa en cuanto a que la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011, es una de **carácter no punitivo** dado que constituye una "medida de seguridad". Sin embargo, aclaramos "que la medida de seguridad que constituye la inscripción en el Registro de un ofensor sexual es distinta a la del Art. 91 del Código Penal, 33 LPRA sec. 4719, pues esta última conlleva la reclusión de

---

[6] Conviene destacar que cuatro (4) jueces de este Tribunal concurrieron con el resultado al cual arribó la Opinión mayoritaria por entender que resultaba **innecesario** recurrir al principio de favorabilidad contenido en el Código Penal de Puerto Rico. Esto, en atención a que la finalidad del Registro es garantizar la seguridad de la ciudadanía y **no imponer una pena**. A la luz de esto, la Asamblea Legislativa otorgó a la Rama Judicial la discreción de decidir si las disposiciones de la Ley Núm. 243-2011 tienen carácter retroactivo. Véase *Hernández García*, 186 DPR en la pág. 682 (Op. Concurrente, J. Hernández Denton); *Hernández García*, 186 DPR en la pág. 684 (Op. Concurrente, J. Martínez Torres). A su vez, esto permitiría que los tribunales, conforme a los requisitos establecidos en dicha ley, pudiesen excluir o mantener a una persona convicta de alguna modalidad de abuso sexual en el Registro. *Hernández García*, 186 DPR en la pág. 682 (Op. Concurrente, J. Rodríguez Rodríguez).

la persona en alguna institución para tratamiento". *Id.* en la pág. 677. En este sentido, utilizamos la frase "medida de seguridad" en el mismo contexto que contempló la Asamblea Legislativa en la Exposición de Motivos de dicha ley; a saber, un mecanismo para **garantizar la seguridad de la ciudadanía.**

De otra parte, en *Placer Román v. ELA y otros*, 193 DPR 821 (2015) (Sentencia), se expidió el recurso de *mandamus* presentado por el peticionario y se eliminó su nombre del Registro. Las opiniones de conformidad y la opinión concurrente emitidas por varios miembros de este Tribunal coincidieron en que al señor Placer Román no le aplicaban los términos para permanecer en el Registro establecidos en las enmiendas de la Ley Núm. 243-2011. Esto, dado que cuando dicho cuerpo normativo entró en vigor, ya habían transcurrido los diez (10) años de inscripción que imponía la Ley Núm. 128-1997, bajo la cual originalmente se le impuso la obligación de registrarse. Véase *Placer Román*, 193 DPR en la pág. 838 (Sentencia) (Op. de Conformidad, J. Fiol Matta); *Placer Román*, 193 DPR en las págs. 840-41 (Sentencia) (Op. de Conformidad, J. Martínez Torres); *Placer Román*, 193 DPR en las págs. 860-61 (Sentencia) (Op. Concurrente, J. Estrella Martínez). En otras palabras, al momento de aprobarse la Ley Núm. 243-2011, el señor Placer Román ya había cumplido con el término dispuesto bajo la ley vigente al momento de dictarse sentencia en su contra.

**C.**

A la luz del derecho antes esbozado, y la situación fáctica del presente caso, podemos delinear varios asuntos que nos permitirán dirimir la controversia principal ante nuestra consideración. En primer lugar, está claro que el señor Ferrer Maldonado se declaró culpable por los delitos de actos lascivos (sin minoridad) y tentativa de violación y se le ordenó inscribirse en el Registro bajo los parámetros de la Ley Núm. 28-1997. En atención a ello, éste lleva registrado desde la fecha en la cual se dictó sentencia en su contra, el 27 de agosto de 2003. Como discutiéramos anteriormente, y bajo las disposiciones de la Ley Núm. 28-1997, el señor Ferrer Maldonado debía permanecer registrado por un término de diez (10) años desde que hizo su alegación de culpabilidad; es decir, hasta agosto del 2013. No obstante, **mientras éste se encontraba cumpliendo su sentencia de libertad a prueba**, la Asamblea Legislativa derogó la Ley Núm. 28-1997, aprobó la Ley Núm. 266-2004 y posteriormente la enmendó mediante la Ley Núm. 243-2011. Surge, entonces, la siguiente interrogante: ¿Le aplica al señor Ferrer Maldonado la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011? Veamos.

El Art. 3d de la Ley Núm. 266-2004 expresamente disponía que aquellas personas obligadas a registrarse bajo la Ley Núm. 28-1997 quedarían registradas bajo el nuevo esquema legal. Véase Art. 3(d) de la Ley Núm. 266-2004, 4 LPRA sec. 536a(d) (Ed. 2010). En cuanto al cómputo, previo a las

enmiendas del 2011, la ley disponía que la obligación de registrarse sería desde que la persona cumplió la sentencia impuesta. Sin embargo, la Ley Núm. 266-2004 nada dispuso en su versión original sobre la aplicación retroactiva y el momento desde cuando se computa el tiempo que una persona, que ya estaba inscrita en el Registro debía permanecer en él.[7] Esto sí quedó alterado con las enmiendas del 2011.

Si bien es cierto que la Ley Núm. 243-2011 no contempla **expresamente** un término por el cual los ofensores sexuales obligados a registrarse bajo la Ley Núm. 28-1997 debían continuar en el Registro, la Asamblea Legislativa **no alteró** lo dispuesto en el Art. 3d de la Ley Núm. 266-2004, aunque ahora se encuentra en el Art. 3e, en torno a **la obligación de éstos de permanecer registrados**. Véase Art. 3(e) de la Ley Núm. 266-2004, 4 LPRA sec. 536a(e), según enmendada, y Art. 3(d) de la Ley Núm. 266-2004, 4 LPRA sec. 536a(d) (Ed. 2010). Sin embargo, el Art. 15 de Ley Núm. 243-2011, estableció que, con excepción de los dos (2) incisos ya discutidos, "[l]as demás disposiciones podrán tener efecto retroactivo". Art. 15 de la Ley Núm. 243-2011, 4 LPRA sec. 536 (Vigencia).

A la luz de todo esto, el señor Ferrer Maldonado, quien quedó registrado bajo los parámetros de la Ley Núm. 28-1997, pero cuya moción ante el foro primario solicitando que sus datos e información personal fuesen eliminados del Registro

---

[7] La Ley establecía que la ley "comenzar[ía] a regir a los (90) días de su aprobación". Art. 17 de la Ley Núm. 266-2004.

ocurrió luego de la aprobación de las enmiendas introducidas por la Ley Núm. 243-2011, nos lleva a concluir que éstas le aplican retroactivamente.[8] Ahora bien, la discreción otorgada por el legislador para aplicar retroactivamente las disposiciones de la Ley Núm. 243-2011 implica que les corresponde a los operadores del Derecho que laboran en la Rama Judicial decidir en cuáles instancias deben o no aplicarlas. Véase *Pueblo v. Hernández García*, 186 DPR en las págs. 679-80. Es al ejercer esta discreción que debemos considerar la controversia principal en el caso de epígrafe: ¿La aplicación retroactiva de estas enmiendas, según dispuso textualmente la Asamblea Legislativa, viola la prohibición

---

[8] Al margen de las consideraciones constitucionales, este **análisis estatutario** cobra mayor fuerza si tomamos en consideración otros dos (2) asuntos. Primero, existía una anomalía en la Ley Núm. 28-1997 entre el tiempo a permanecer registrado, el momento desde cuándo debe inscribirse y los delitos por los cuales un ofensor sexual estaba obligado a registrarse. Como ocurre en el presente caso, un ofensor sexual podía solicitar que se excluyera su nombre e información personal del Registro **sin haber cumplido la totalidad** de la sentencia impuesta. Esto resulta contrario a la intención legislativa de la Ley Núm. 266-2004 y las enmiendas introducidas por la Ley Núm. 243-2011. Además, bajo los parámetros de la ley vigente hoy, el tiempo que un ofensor sexual debe permanecer en el Registro guarda una relación razonable con las sentencias y penas mínimas que se le pueden imponer a una persona que incurre en los delitos sexuales enumerados en la ley. De otra parte, como mencionáramos anteriormente, la Ley Núm. 266-2004 volvió a ser enmendada en el año 2015. Las enmiendas introducidas por la Ley Núm. 5 del 2 de febrero de 2015 **tenían efecto retroactivo** por disposición expresa e inequívoca de la Asamblea Legislativa. Véase Art. 7 de la Ley Núm. 5 del 2 de febrero de 2015 ("Esta Ley entrará en vigor inmediatamente tras su aprobación y tendrá efecto retroactivo".) Este mandato apoya aún más el análisis estatutario antes esbozado.

constitucional en contra de la aplicación de leyes *ex post facto*? Veamos.

## III.

## A.

El Art. II, Sec. 12 de nuestra Constitución prohíbe la aprobación de leyes *ex post facto*. Const. PR, LPRA, Tomo 1.[9] En *González Fuentes v. ELA*, 167 DPR 400, 408 (2006), abundamos sobre esta disposición constitucional e indicamos que son cuatro los tipos de estatutos que consideramos *ex post facto*: (1) aquellas leyes que criminalizan y castigan un acto que al ser realizado no era delito; (2) las que agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) las que alteran el castigo, imponiendo una pena mayor que la fijada para el delito al momento de ser cometido, y (4) las que alteran las reglas de evidencia exigiendo menos prueba que la requerida por la ley al momento de la comisión del delito para castigar al acusado o reducir el quantum de evidencia necesario para encontrarlo culpable. Véase además, *Pueblo en interés menor FRF*, 133 DPR 172 (1993); *Fernández v. Rivera, Jefe de Presidio*, 70 DPR 900 (1949). Por lo tanto, esta disposición constitucional busca prohibir la aplicación retroactiva de una ley que agrave para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir una sentencia o su extensión. Véase E. L. Chiesa Aponte, *Derecho Procesal Penal*

---

[9] La Constitución de los Estados Unidos contiene, para todos los efectos prácticos, una cláusula idéntica a la nuestra. Véase US Const. Art. I sec. 10, cl. 1.

*de Puerto Rico y Estados Unidos* (Ed. Forum, 1992) en las págs. 545-49; véase además L.E. Chiesa Aponte, *Derecho Penal Sustantivo*, (2da ed., Publicaciones JTS, 2013) en las págs. 16-17. En ese sentido, la protección contra leyes *ex post facto* solamente se activa cuando se pretende aplicar una ley penal de manera retroactiva. *González Fuentes*, 167 DPR en la pág. 408. Sin embargo, una vez fuera del contexto penal, "la Asamblea Legislativa **no está impedida de aplicar retroactivamente leyes de carácter civil**". *Id.* (énfasis suplido).[10]

**B.**

De otra parte, debemos reseñar brevemente aquella jurisprudencia del Tribunal Supremo de Estados Unidos, de los tribunales federales apelativos y de los distintos tribunales supremos estatales, que ha evaluado la posibilidad de que una ley de carácter civil viole la prohibición constitucional de aplicar leyes *ex post facto* cuando éstas resultan punitivas en su propósito, o en sus efectos, y, por lo tanto, contravienen la intención legislativa sobre su naturaleza civil.

En *Smith v. Doe*, 538 US 84 (2003) dos (2) individuos fueron acusados de agresión sexual contra menores y, tras su

---

[10] La retroactividad de las leyes civiles se rige por lo dispuesto en el Art. 3 del Código Civil, el cual establece que: "[l]as leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario. En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior". 31 LPRA sec. 3. Véase en general, *Díaz Ramos v. Matta Irizarry*, 198 DPR 916, 929-931 (2017).

convicción, impugnaron la constitucionalidad del *Alaska Sex Offender Registration Act* (ASORA), alegando que dicho estatuto violaba la prohibición de leyes *ex post facto* establecida en la Constitución federal. Para dilucidar esta controversia, el Tribunal recurrió al "intent-effect test" adoptado en *United States v. Ward*, 448 US 242 (1980). Este escrutinio judicial requiere pasar juicio sobre los efectos de una ley, independientemente de que la asamblea legislativa estatal la catalogue como una legislación de carácter civil.[11] Es decir, el escrutinio contrapone la intención legislativa y los efectos prácticos de la ley.

Para analizar esto, el Tribunal Supremo federal empleó una serie de criterios anteriormente utilizados en el contexto de la cláusula en contra de la doble exposición de la Constitución federal, según establecidos en *Kennedy v. Mendoza-Martínez*, 372 US 144 (1963).[12] Estos criterios son:

---

[11] En específico, la opinión del Tribunal Supremo federal dispuso que:

> We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil.

*Smith v. Doe*, 538 US 84, 92 (2003) (citas omitidas).
[12] *Id.* en la pág. 97 ("[W]hether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.")(citas omitidas).

(1) si la sanción impuesta se ha considerado históricamente como un "castigo" (es decir, si el objetivo de la ley es la retribución o servir como un disuasivo); (2) si la legislación establece alguna discapacidad o restricción para su implantación; (3) si la medida legislativa aplica a una conducta ya considerada como un delito; (4) si la legislación tiene una relación racional con un propósito no punitivo, y (5) si la medida legislativa resulta excesiva en contraposición a ese propósito no punitivo.[13] Así, el Tribunal Supremo federal resolvió -expresamente- que la ley que creaba el Registro de Ofensores Sexuales de Alaska no era punitiva y que su aplicación retroactiva no violaba la protección contra leyes *ex post facto* contenida en la Constitución federal, puesto que tenía un objetivo gubernamental legítimo de promover la seguridad pública, mediante la difusión de cierta información de un ofensor sexual.

---

[13] El binomio del "intent-effect test" y los criterios de *Mendoza-Martínez* había sido utilizado por el máximo foro federal en *Kansas v. Hendricks*, 521 US 346 (1997). En este caso, un hombre convicto por cometer un delito sexual contra dos (2) adolescentes cuestionó la constitucionalidad de una ley del estado de Kansas que permitía que el Estado solicitase el "civil confinement" como medida protectora luego de que un ofensor sexual cumpliese su sentencia. En dicha ocasión, el Tribunal Supremo federal resolvió que el requerimiento de "civil confinement", según los parámetros de la ley estatal en cuestión, no tenía un efecto punitivo y, por lo tanto, no violaba la cláusula de la Constitución federal sobre la doble exposición. Asimismo, sostuvo que dicha ley no violaba la cláusula sobre la aplicación de leyes *ex post facto*, pero recurrió a fundamentos distintos para arribar a dicha conclusión.

   En casos posteriores a este último, el Tribunal Supremo de Estados Unidos se ha **rehusado** a alterar la normativa pautada en torno a la metodología para evaluar el efecto de la aplicación *ex post facto* de la ley federal SORNA o sus contrapartes estatales y ha **descartado** nuevas teorías legales presentadas con la intención de revocar la decisión de *Smith v. Doe*. Véase *United States v. Kebodeaux*, 133 S.Ct. 2496 (2013); *United States v. Juvenile Male*, 131 S.Ct. 2860 (2011); *Carr v. United States*, 560 US 438 (2010).[14]

   A nivel estatal, la **gran mayoría** de los tribunales supremos, aplicado el estándar de *Smith v. Doe*, ha resuelto que las leyes que crean los Registros de Ofensores Sexuales no contravienen las respectivas cláusulas constitucionales de sus estados sobre la prohibición de aplicar leyes *ex post facto*.[15]

---

[14] Los tribunales apelativos federales, de igual forma, han validado tanto la metodología como el resultado de *Smith v. Doe*. Véase por ejemplo, *Vasquez v. Foxx*, 895 F. 3d 515 (7th Cir. 2018); *Shaw v. Patton*, 823 F.3d 556 (10th Cir. 2016); *Doe v. Cuomo*, 755 F.3d 105 (2d Cir. 2014); *United States v. Parks*, 698 F.3d 1 (1st Cir. 2012); *United States v. WBH*, 664 F.3d 848 (11th Cir. 2011). La excepción a esto es una decisión de la Corte de Circuito de Apelaciones de Estados Unidos para el Sexto Circuito en la que dicho foro resolvió que la ley SORNA del estado de Michigan no podía aplicarse retroactivamente en contravención a la cláusula *ex post facto* de la Constitución federal. En ese caso, el máximo foro judicial federal se negó a expedir el recurso de *certiorari*. Véase *Doe v. Snyder*, 834 F.3d 696 (6th Cir. 2016) (cert. denied).

[15] Véase, por ejemplo, *Kammerer v. State*, 2014 WY 50, 322 P.3d 827 (Wyo. 2014); *State v. Eighth Jud. Dist. Ct. (Logan D.)*, 129 Nev. 492, 306 P.3d 369 (2013); *Smith v. State*, 2010-1140 (La. 1/24/12), 84 So. 3d 487; *State v. Henry*, 224 Ariz. 164, 228 P.3d 900 (Ct. App. 2010); Buck v. Com., 308 S.W.3d 661 (Ky. 2010); *State v. Germane*, 971 A.2d 555(R.I. 2009); *State v. Guidry*, 105 Haw. 222, 96 P.3d 242 (2004); *In re Alva*, 33 Cal. 4th 254, 92 P.3d 311 (2004); *In re W.M.*, 851

En atención a lo antes discutido, estamos en posición de adjudicar la controversia principal ante nuestra consideración.

**IV.**

La constitucionalidad del Registro de Ofensores Sexuales en Puerto Rico ha sido cuestionada desde la aprobación de la primera ley de esta índole en el 1997. El 1 de marzo de 2000, el entonces presidente de la Junta de Libertad Bajo Palabra, Sr. Enrique García García, le peticionó una opinión legal al entonces Secretario de Justicia, Lcdo. Angel E. Rotger Sabat, mediante la cual solicitaba que éste se expresara sobre la aplicación retroactiva de la Ley Núm. 28-1997 a los convictos que se beneficiaban del privilegio de libertad bajo palabra. La preocupación principal del Presidente era que la aplicación retroactiva de esta Ley podía constituir una violación a la disposición constitucional sobre leyes *ex post facto* en el ámbito penal. Para ese entonces, el Tribunal Supremo de Estados Unidos aún no había resuelto el caso de *Smith v. Doe* antes reseñado. Sin embargo, un sinnúmero de estados había aprobado leyes similares a la de Puerto Rico y sus respectivos tribunales estatales habían avalado su constitucionalidad. Luego de reseñar la jurisprudencia de

---

A.2d 431 (D.C. 2004). Véase además Lori McPherson, *The Sex Offender Registration and Notification Act (Sorna) at 10 Years: History, Implementation, and the Future*, 64 Drake L. Rev. 741, 778, n. 211 (2016), para un recuento histórico del desarrollo de estas leyes a nivel estatal y federal.

los tribunales estatales y, aquellas de los tribunales federales hasta el momento, el Secretario concluyó que:

> Al no constituir la Ley Núm. 28 de 1997 . . . una medida penal de carácter punitivo, que afecte la situación de los convictos en libertad bajo palabra o que haga más oneroso el cumplimiento de su sentencia, la medida en cuestión es más bien un precepto regulador y remedial cuyo propósito es proteger a la ciudadanía. No se configura una violación a la prohibición de leyes *ex post facto*.

*Op. Secr. Just. 2000-OSJ-02* (1 de marzo de 2000). Diecinueve (19) años más tarde aún sigue latente la controversia que se le planteara al Secretario en aquel entonces. Hoy, de una vez y por todas, le ponemos un punto final a dicha controversia.

No debe caber duda de que la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011, por disposición expresa de la Asamblea Legislativa y conforme a lo dispuesto por este Foro en *Pueblo* v. *Hernández García*, es **una ley civil, no penal y de carácter no punitivo**. En consideración a la doctrina reiterada en *González Fuentes*, esta ley no cualifica dentro de ninguno de los cuatro (4) tipos de estatutos que consideramos contrarios a nuestra cláusula constitucional *ex post facto*. Esto, de por sí, sería suficiente para resolver la controversia. No obstante, estimamos oportuno recurrir al análisis adelantado por el Tribunal Supremo de Estados Unidos en *Smith v. Doe*.[16]

---

[16] Este Tribunal históricamente no ha conferido mayor protección que el ámbito mínimo reconocido por el Tribunal Supremo federal en cuanto al alcance de la prohibición constitucional sobre la aplicación de leyes *ex post facto*. Véase *Pueblo v. Candelario Ayala*, 166 DPR 118, 140 (2005)

Más allá de que la Asamblea Legislativa de Puerto Rico disponga en su Exposición de Motivos que nos encontramos ante una ley no punitiva, ¿en realidad, este cuerpo normativo constituye una? Para este análisis corresponde explicar los efectos de la inscripción en el Registro, conforme la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011.

Una persona convicta de un delito sexual y obligada a inscribirse en el Registro tiene, en esencia, que mantener su información actualizada con la Policía de Puerto Rico sobre sus datos personales (número de teléfono, correo electrónico, redes sociales, por ejemplo), lugar de residencia, trasfondo educativo y profesional, su licencia de conducir y de cualquier vehículo de motor a su nombre, entre otras; y notificar con antelación de cualquier viaje fuera de la jurisdicción. Véase 4 LPRA sec. 536c. El proceso comienza con la obligación de tomarse una fotografía, huella digital o de la palma de la mano y dicho proceso se revisará anualmente para ofensores Tipo I, cada seis (6) meses para ofensores Tipo II y cada tres (3) meses para ofensores Tipo III. *Id.* Asimismo, una persona convicta por un delito sexual contra un menor de edad está prohibido de establecer su residencia a quinientos (500) pies o menos de alguna escuela

---

(Sentencia) (Op. de Conformidad, J. Fuster Berlingeri); *Pueblo v. Rexach Benítez*, 130 DPR 273, 301-2 (1992); *Loíza Sugar Co. v. Buscaglia, Tes.*, 63 DPR 616, 619 (1944). Véase además, 4 Diario de Sesiones de la Convención Constituyente 2572 (1961). Por todo lo cual, lo más apropiado para este caso es continuar con esta norma de política judicial.

elemental, intermedio o superior o establecimiento de cuido de niños. Véase 4 LPRA sec. 536b(f).

De igual forma, toda la información recopilada estará disponible para cualquier agencia del orden público, estatal o federal, o institución privada que así lo solicite. Véase 4 LPRA sec. 536e. Ciertos detalles de la información y los datos personales del ofensor sexual permanecerán activos a través del Internet y las páginas oficiales del Registro, a nivel estatal como federal. Véase 4 LPRA sec. 536f. A pesar de esto último, la Ley claramente establece que la información contenida en esta página no podrá utilizarse de forma ilegal para herir, acosar o cometer delito contra alguna persona convicta de delitos sexuales. *Id.* Una violación a esto último podría acarrear penalidades civiles o criminales. *Id.*

Con esto en mente, procedemos a aplicar los criterios esbozados por el Tribunal Supremo de Estados Unidos en *Smith v. Doe*. Primeramente, en nuestra jurisdicción, el requisito de inscribirse en el Registro, desde la primera ley aprobada, no se ha considerado como una actuación de índole punitiva por parte del Estado. Aunque aparenta tener un propósito disuasivo, su finalidad siempre ha sido, al igual que en otras jurisdicciones estadounidenses y a nivel federal, **informar** al público y **servir** como un medio por el cual el Estado pueda velar por **la seguridad, protección y bienestar general**. Tampoco estamos ante una "medida de seguridad" bajo

los parámetros del Art. 91 del Código Penal; así lo aclaramos en *Pueblo v. Hernández García*.

En segundo lugar, nuestro ordenamiento no impone una incapacidad o restricción afirmativa alguna más allá de la obligación de inscribirse en el Registro y los trámites que conlleva actualizar la información allí contenida. La necesidad de proveer la dirección residencial de la persona obligada a inscribirse en el Registro **no tiene efectos semejantes**, ni tan siquiera cercanos, a la pena de encarcelamiento o alguno de los mecanismos de sentencia diferida.[17]

En tercer lugar, esta ley aplica a una conducta ya considerada como un delito de abuso sexual; es decir, no penaliza una nueva conducta criminal. Al contrario, sólo reconoce aquellas conductas ya estatuidas que la sociedad puertorriqueña, a través de la Asamblea Legislativa, considera reprochables y merecedoras de una difusión pública para quien así desee conocer de ella.

Por último, el Registro tiene el importante propósito de **divulgar** cierta **información** al público y, a su vez, **promover** la **seguridad** de la ciudadanía. Una persona podría utilizar la información contenida en el Registro a la hora

---

[17] Como indicamos anteriormente, las limitaciones en torno a que una persona convicta por un delito sexual contra un menor de edad pueda establecer su residencia a quinientos (500) pies o menos de alguna escuela elemental, intermedia o superior o establecimiento de cuido de niños, **no puede aplicarse retroactivamente** por disposición expresa de la ley. Véase Art. 15 de la Ley Núm. 243-2011, 4 LPRA sec. 536 (Vigencia).

de considerar, por ejemplo, los siguientes asuntos de su vida: dónde debe comprar o alquilar una residencia, o a cuáles parques recreacionales o escuelas debe llevar a sus hijos e hijas, entre varias otras. Esto, claro está, con la salvaguarda de que la ley **protege** a los ofensores sexuales obligados a registrarse contra cualquier ciudadano que intente herir, acosar o cometer algún delito contra ellos. Véase 4 LPRA sec. 536f. Una de las justificaciones de política pública para propagar la información contenida en el Registro, según nuestra Asamblea Legislativa, es que existe una probabilidad de reincidencia para personas convictas por delitos sexuales.[18]

La Ley Núm. 266-2004, según enmendada, no resulta excesiva puesto que la obligación de registrarse es

---

[18] Así lo hizo constar la Asamblea Legislativa en la Exposición de Motivos de la Ley Núm. 266-2004 cuando dispuso que:

> Ante el peligro de reincidencia en la comisión de delitos que implican crímenes sexuales o que constituyen abuso contra menores y por el riesgo que puede representar y el daño que puede causar, existe la necesidad de que tanto las agencias de orden público como la comunidad conozcan el paradero de aquellas personas que han sido convictas de delitos de esta naturaleza.

*Exposición de Motivos*, Ley Núm. 266-2004.

Asimismo, el Informe Positivo de la Comisión de lo Jurídico y de Ética de la Cámara de Representantes sobre la pieza legislativa que dio lugar a la Ley Núm. 243-2011, que enmendó la Ley Núm. 266-2004, reconoció que las cifras que indican una disminución en la reincidencia de los ofensores sexuales se le puede atribuir al efecto positivo que han tenido estos Registros en todos los Estados Unidos. Véase *Informe Positivo sobre el Sustitutivo del Senado al P del S. 769, P. del S. 771, P. de la C. 89, P. de la C. 740, P. de la C. 1298 y P. de la C. 1953.*

proporcional al interés legítimo gubernamental de seguridad ciudadana. El interés del Estado en garantizar la protección de los sectores más vulnerables ante la reinserción en la sociedad de las personas convictas por delitos de abuso sexual tiene que prevalecer frente a cualquier incomodidad o estigma social que un ofensor sexual pueda sufrir. Esto, en atención a que el legislador tiene un interés particular en proteger a las víctimas de abuso sexual, en particular, los menores de edad. En la Exposición de Motivos de la Ley Núm. 243-2011, la Asamblea Legislativa hizo hincapié en que estas enmiendas buscaban, "brindar mayor protección y seguridad a los menores de edad en cuanto a la explotación sexual y crímenes violentos se refiere; promover la seguridad de los jóvenes; atacar y prevenir el abuso infantil y la pornografía infantil, entre otros asuntos". *Exposición de Motivos*, Ley Núm. 243-2011.

**V.**

En atención a todo esto, resolvemos que la aplicación retroactiva de las enmiendas introducidas por la Ley Núm. 243-2011 a la Ley Núm. 266-2004 **no violan** la prohibición constitucional en contra de la aplicación de leyes *ex post facto*. Esta ley, y sus más recientes enmiendas, es una de carácter civil, no penal y no punitiva y cumple cabalmente con la metodología adjudicativa adoptada en *Smith v. Doe*. En aras de evitar cualquier posible ejercicio de arbitrariedad, y para promover la uniformidad en las decisiones de los tribunales en Puerto Rico, luego de una reflexión ponderada

sostenemos que: todas las disposiciones contenidas en las enmiendas introducidas por la Ley Núm. 243-2011 aplican de forma retroactiva, independientemente de si la persona que impugna su anotación en el Registro arguye que, en su situación particular, corresponde emplear el principio de favorabilidad, conforme a lo resuelto en *Pueblo v. Hernández García*, 186 DPR 656 (2012).[19]

Al aplicar esto a los hechos del presente caso, el señor Ferrer Maldonado debe considerarse como un Ofensor Sexual Tipo III por haber sido convicto de los delitos de tentativa de violación y actos lascivos (sin minoridad), según discutimos anteriormente. Esto nos lleva a concluir, que tras permitirse en nuestro ordenamiento la aplicación retroactiva de la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011, el señor Ferrer Maldonado debe permanecer inscrito en el Registro de por vida. Véase 4 LPRA secs. 536(10); 536(c).

## VI.

Por los fundamentos que anteceden, revocamos al Tribunal de Apelaciones y reinstalamos el dictamen del Tribunal de Primera Instancia. Se ordena que el nombre y los datos personales del Sr. Efraín Ferrer Maldonado, según establecido por la Ley Núm. 266-2004 y enmendada por la Ley

---

[19] Esto, **exceptuando** lo dispuesto textualmente por la Asamblea Legislativa en los incisos (f) y (g) del Art. 4 de la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011, sobre las limitaciones al establecimiento de residencia para las personas convictas por delitos de abuso sexual contra menores de edad. Véase 4 LPRA sec. 536b(f); 536b(g).

Núm. 243-2011, permanezcan inscritos en el Registro de
Ofensores Sexuales.


                              Anabelle Rodríguez Rodríguez
                                      Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Efraín Ferrer Maldonado<br><br>Recurrido | **Núm.** CC-2017-0478 |

SENTENCIA

San Juan, Puerto Rico, a 7 de marzo de 2019

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, revocamos al Tribunal de Apelaciones y reinstalamos el dictamen del Tribunal de Primera Instancia.

Se ordena que el nombre y los datos personales del Sr. Efraín Ferrer Maldonado, según establecido por la Ley Núm. 266-2004 y enmendada por la Ley Núm. 243-2011, permanezcan inscritos en el Registro de Ofensores Sexuales.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente con opinión escrita. El Juez Asociado señor Estrella Martínez disiente con opinión escrita a la que se unen la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Kolthoff Caraballo.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Efraín Ferrer Maldonado<br><br>Peticionario | CC-2017-0478 | *Certiorari* |

Opinión disidente emitida por la Jueza Presidenta Oronoz Rodríguez

En San Juan, Puerto Rico, a 7 de marzo de 2019.

En una sociedad democrática, la firmeza y durabilidad de las protecciones de los ciudadanos frente al Estado dependen del celo con el cual los tribunales hagamos valer los derechos y garantías que consagra nuestra Constitución. Mientras más reprochable es la conducta del ciudadano, más fuerza y disciplina tenemos que emplear para hacer valer sus derechos frente al poder monumental del Estado. La decisión de una Mayoría de este Tribunal derrota una de las protecciones que hasta hoy tenía un ciudadano: la prohibición constitucional de leyes *ex post facto*. La Mayoría le ha dado el visto bueno al Estado para que agrave, retroactivamente, las restricciones a las cuales una persona convicta de un delito sexual está sujeta al ingresar a la libre comunidad. Ello, aun cuando estas restricciones <u>no</u> <u>existían</u> al momento de su enjuiciamiento y convicción.

No nos engañemos, el resultado de esta actuación es que  aun de probarse que la persona convicta se rehabilitó, o que no representa un peligro para la sociedad, tendrá que cumplir por el resto de su vida con restricciones adicionales ausentes cuando fue convicto y se le impuso la pena. Ello pone en evidencia que la contención de que el fin de esta ley es evitar la reincidencia, es puro pretexto hueco. Si solo la muerte del convicto pone punto final a su cumplimiento con la sociedad por haber delinquido, ¿cómo se puede argumentar que esta legislación no constituye un castigo adicional a una clase particular de ofensor?

Hace apenas siete años este Tribunal, con una composición decididamente homogénea a la que hoy pauta, resolvió que la legislación que hoy revisamos era punitiva.[20] Hoy, amparándose en un caso federal que no estamos obligados a seguir y rechazando la posición que han adoptado al menos seis tribunales supremos estatales y una Corte de Apelaciones federal,[21] autoriza la aplicación retroactiva del estatuto bajo un argumento insostenible de que se está ante una ley civil, de carácter no punitivo. Se equivoca, peligrosamente, la Mayoría. Por eso, disiento.

---

[20] Pueblo v. Hernández García, 186 DPR 656 (2012).

[21] Cmmw. v. Muniz, 164 A.3d 1189 (Pa. 2017), cert. denied sub nom. Pennsylvania v. Muniz, 138 S. Ct. 925 (2018); Does #1-5 v. Snyder, 834 F.3d 696 (6th Cir. 2016); Starkey v. Oklahoma Dept. of Corrections, 305 P.3d 1004 (Okla. 2013); State v. Letalien, 985 A.2d 4, 26 (Me. 2009); Com. v. Baker, 295 S.W.3d 437, 447 (Ky. 2009); Doe v. State, 189 P.3d 999 (Alaska 2008).

I

En este caso, el señor Ferrer Maldonado fue convicto por tres (3) infracciones al Artículo 105 (actos lascivos sin minoridad) y dos (2) infracciones al Artículo 99 (tentativa de violación) del Código Penal de 1974. Como resultado, el Tribunal de Primera Instancia le impuso una pena de quince años y medio que cumpliría bajo el régimen de libertad a prueba y ordenó incluirlo en el Registro. **De acuerdo a lo establecido en la Ley Núm. 28-1997 el señor Ferrer Maldonado debía ser eliminado del Registro en el 2013.**

Sin embargo, conforme con la Ley Núm. 243-2011 el señor Ferrer Maldonado debe permanecer en el Registro **de por vida y además cumplir con una serie de requisitos adicionales.** Entre estos requisitos se encuentra el **presentarse cada tres (3) meses ante la Comandancia de la Policía de la jurisdicción en donde resida para actualizar y verificar la información contenida en el Registro y tomarse una fotografía, huella digital o de la palma de la mano.** Además, contrario a lo establecido en la Ley Núm. 28-1997, bajo la nueva ley se le priva de un mecanismo para eliminar su nombre del Registro.[22]

---

[22] Este cambio resulta determinante ya que, en cualquier otra circunstancia, una persona que cometió un delito grave puede solicitar la exclusión de su convicción del certificado de antecedentes penales en un término de cinco años desde que cumplió la pena. Sin embargo, si su información está incluida en el Registro, la única manera que la persona convicta podrá obtener el certificado es si, a su vez, se le elimina del Registro. En el caso del señor Ferrer Maldonado, que debe permanecer en el Registro de por vida, estaría impedido de excluir, de por vida, su convicción de su certificado de antecedentes penales.

Aun presumiendo que la Asamblea Legislativa no tuvo la intención de aprobar una ley punitiva en este caso, en su efecto y aplicación lo es.[23] Obligar al señor Ferrer Maldonado a permanecer en el Registro de por vida y acudir a la Comandancia de la Policía cada tres meses para actualizar su información sin duda altera el castigo e impone una pena mayor que la fijada por el delito al momento de su comisión. Estos requisitos claramente conllevan una carga adicional que no existía al momento de los hechos. Considero que la aplicación retroactiva de la Ley Núm. 243-2011 es una carga muy onerosa que agrava sustancialmente el castigo y, por ende, viola la cláusula contra la aprobación de leyes *ex post facto*.

## II

Aquí no está en juego la facultad indiscutible que tiene la Asamblea Legislativa para aprobar leyes dirigidas a proteger a la sociedad de los ofensores sexuales y prevenir delitos sexuales. Únicamente está ante nuestra consideración si la Constitución del Estado Libre Asociado de Puerto Rico permite que el Estado agrave las consecuencias de un delito para un convicto que ya cumplió su Sentencia mediante la

---

[23] En Smith v. Doe, 538 US 84 (2003), el Tribunal Supremo federal describió el análisis pertinente en los siguientes términos:

> We must ascertain whether the legislature meant the statute to establish civil proceedings. If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive we must further examine whether the statutory scheme is so punitive either in purpose **or effect** as to negate {the State's} intention to deem it civil.

(Énfasis suplido).

aplicación retroactiva de una ley que se aprobó luego de su enjuiciamiento. Ello contraviene abiertamente la prohibición constitucional de leyes *ex post facto* así como la tendencia que, hasta ahora, había exhibido la jurisprudencia de este Tribunal. Espero que este Tribunal recapacite.


Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Efraín Ferrer Maldonado<br><br>Recurrido | CC-2017-0478 | Certiorari |

Opinión disidente emitida por el Juez Asociado señor Estrella Martínez a la cual se unen la Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 7 de marzo de 2019.

Reconocer derechos en situaciones simpáticas es sumamente fácil, pero también es nuestro deber reconocerlos en situaciones antipáticas, aunque sea difícil. En reconocimiento a ello, así actuamos en Pueblo v. Hernández García, infra, precedente establecido en el 2012 y bajo el que reconocimos la naturaleza punitiva de la legislación que hoy nuevamente nos ocupa. Sorprendentemente, ahora el bloque mayoritario resuelve en una dirección diametralmente contraria. Para ello, ignora y desecha los ineludibles fundamentos en Derecho que aplicaremos en esta Opinión Disidente. De este modo, una Mayoría vuelve a cometer el error de no reconocer que hay leyes civiles que inciden en forma punitiva contra derechos individuales, tales como las

confiscaciones y el registro de ofensores sexuales, por lo que se activan las garantías invocadas por el recurrido en este caso.

Hoy no estamos juzgando los repudiables actos en que incurrió el recurrido, sino la aplicación retroactiva de una ley que fue aprobada con posterioridad a su proceso judicial y que tiene consecuencias punitivas no previstas en aquel momento. No obstante, el saldo del análisis mayoritario provoca que no se apliquen ni reconozcan las garantías constitucionales y del Derecho Penal establecidas por los constituyentes y por la Asamblea Legislativa. El reconocimiento de estas garantías es lo que procedía en Derecho. Por ello, respetuosamente disiento.

Debido a que el trasfondo de la controversia de epígrafe está adecuadamente reseñado en la Opinión Mayoritaria, procedo a exponer las razones de mi disenso.

I

A.

Como es sabido, la Constitución de Puerto Rico prohíbe la aprobación de leyes ex post facto. Art. II, Sec. 12, Const. ELA, LPRA, Tomo 1. De esta manera, se limita el poder punitivo y coercitivo del Estado al impedir que los ciudadanos sean castigados por conducta criminalizada posteriormente a los hechos imputados. L. E. Chiesa Aponte, Derecho Penal Sustantivo, Publicaciones JTS, 2007, pág. 16. La protección constitucional tiene como propósito garantizar que "los estatutos provean al

ciudadano una notificación adecuada (fair warning) de la conducta prohibida y las consecuencias penales que acarrea realizar dicha conducta". González v. E.L.A., 167 DPR 400, 408 (2006). De igual forma, busca evitar que el Estado implante medidas punitivas arbitraria o vengativamente. Íd.

A esos fines, la prohibición constitucional en contra de leyes ex post facto aplica cuando un estatuto: "(i) tiene vigencia posterior a los hechos delictivos imputados o cometidos, y (ii) deja al afectado en una situación desfavorable o perjudicial, en relación con el estado de derecho vigente en el momento de la comisión de los hechos delictivos". L. E. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Editorial Forum, 1992, Vol. II, pág. 549. Particularmente, "[s]e considera ex post facto toda ley que en su relación con el delito o **sus consecuencias altere la situación del acusado en su perjuicio**". (Énfasis suplido). D. Nevares-Muñiz, Código Penal de Puerto Rico, Instituto para el Desarrollo del Derecho, 2015, pág. 8. Por ende, la cláusula constitucional prohíbe estatutos de aplicación retroactiva que sean perjudiciales a las personas acusadas. González v. E.L.A., supra, págs. 408-409. En ese sentido, hemos identificado los distintos tipos de estatutos que consideramos que violan la protección en contra de leyes ex post facto, a saber, las leyes que:

> (1) [C]riminalizan y castigan un acto que al ser realizado no era delito; (2) agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) alteran el castigo imponiendo una pena mayor que

la fijada para el delito al momento de ser cometido, y (4) alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el _quantum_ de evidencia necesario para encontrarlo culpable. Íd., pág. 408 (citando a <u>Pueblo en interés menor F.R.F.</u>, 133 DPR 172, 180-181 esc. 9 (1993); <u>Fernández v. Rivera, Jefe del Presidio</u>, 70 DPR 900, 903 (1950)).

En virtud de lo anterior, la prohibición de leyes <u>ex post facto</u> aplica principalmente a la esfera penal. Íd. Cónsono con ello, la protección constitucional se codificó en el Artículo 4 del Código Penal de Puerto Rico, el cual dispone que "[l]a ley penal aplicable es la vigente al momento de la comisión de los hechos". 33 LPRA sec. 5004. De igual forma, el Artículo provee que "[l]a ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito". Íd.

Los estatutos civiles, por el contrario, no activan automáticamente la protección constitucional en contra de leyes <u>ex post facto</u>. <u>González v. E.L.A.</u>, supra, pág. 409. La Asamblea Legislativa, en virtud del Artículo 3 del Código Civil de Puerto Rico, goza de la facultad de aprobar estatutos retroactivamente, siempre que no perjudique los derechos adquiridos al amparo de legislación previa. 31 LPRA sec. 3. Empero, como discutiremos más adelante, la jurisprudencia federal ha reconocido que la catalogación de una ley como civil por parte de la Asamblea Legislativa puede ser invalidada o superada si el tribunal determina que el propósito y las consecuencias del estatuto son,

en realidad, punitivas. Smith v. Doe, 538 US 84, 92 (2003)
(citando a Kansas v. Hendricks, 521 US 346, 361 (1997);   United
States v. Ward, 448 US 242, 248-249 (1980)).


**B.**


El Registro de Personas Convictas por Delitos Sexuales y
Abuso contra Menores (Registro) es una medida adoptada en nuestra
jurisdicción mediante la cual se publica información personal de
personas convictas de delitos sexuales en aras de mantener a las
autoridades y a la ciudadanía en general informada sobre sus
paraderos.[24] 4 LPRA secs. 536-536h. El tribunal ordena la
inclusión de la persona convicta en el Registro al sentenciarla
o al someterla a un programa alternativo de pena. Íd., sec.
536b(a). Desde sus inicios, el Registro impone varias
obligaciones a las personas sujetas a éste, entre ellas someter
voluminosa información y datos personales para su publicación y
reportarse periódicamente ante autoridades gubernamentales. Íd.,
sec. 536c. Particularmente, las personas convictas deben proveer
una amplitud de documentos, incluyendo: número de seguro social,
número de teléfono, correo electrónico, identificación que
utiliza en las redes sociales, lugar de residencia, dirección

---

[24]Para un trasfondo histórico más detallado sobre el
desarrollo del Registro de Personas Convictas por Delitos
Sexuales y Abuso contra Menores (Registro), véase Pueblo v.
Hernández García, 186 DPR 656 (2012); Placer Román v. ELA
y otros, 193 DPR 821, 846-858 (2015) (Sentencia).

postal, trasfondo educativo, experiencia laboral, licencia de conducir, tablilla de vehículos que posea, entre otros. Íd.

Inicialmente, el Registro fue creado en virtud de la Ley Núm. 28-1997 la cual disponía que las personas convictas de delitos sexuales tendrían su información publicada en el Registro por un período de diez años. 1997 Leyes de Puerto Rico 141, 146. A su vez, el estatuto proveía un procedimiento alterno para casos de convictos reincidentes o para las instancias en que el tribunal lo entendiera apropiado. En estas circunstancias, el estatuto establecía que profesionales especializados debían examinar a la persona convicta para así determinar si ésta "ten[ía] la tendencia irreprimida de cometer delitos sexuales por sufrir de un desorden mental o de personalidad que la conviert[iera] en una amenaza para la comunidad". Íd., pág. 147. Si el tribunal concluía que, en efecto, la persona mostraba tendencia a reincidir, la catalogaba como delincuente sexual peligroso. Íd. La caracterización de delincuente sexual peligroso tenía como consecuencia la inclusión al Registro de por vida. Íd. Sin embargo, el estatuto proveía que, luego del transcurso de diez años, las personas catalogadas como delincuentes sexuales peligrosos podrían solicitar al tribunal que se les eximiera de la obligación de permanecer en el Registro. Íd. Para ello, tenían que someter la correspondiente prueba documental, incluyendo informes de profesionales, que demostrara que "ha[ya] cesado la condición mental o el desorden de la personalidad que causaba la comisión de este tipo de delito". Íd. En ese sentido, el estatuto

proveía un esquema dirigido a auscultar la posible reincidencia de la persona convicta, sin necesariamente asumirla por sus pasados delitos. Asimismo, este andamiaje respondía al mandato de la Constitución de Puerto Rico que exige el tratamiento adecuado de las personas que delinquen, en aras de facilitar su rehabilitación social y moral. Art. VI, Sec. 19, Const. ELA, LPRA, Tomo 1.

Posteriormente, la Ley Núm. 28-1997 fue derogada por la Ley Núm. 266-2004 y luego enmendada por la Ley Núm. 243-2011. Actualmente, el estatuto vigente clasifica a las personas convictas en distintas categorías basadas en la naturaleza y gravedad de los delitos cometidos. 4 LPRA secs. 536(8)-536(10). Distinto al estatuto anterior, de la clasificación emana la cantidad de tiempo que estará la información personal de la persona convicta en el Registro y la frecuencia con la que ésta se tendrá que reportar a la Comandancia de la Policía de Puerto Rico (Policía de Puerto Rico).[25]

Nótese que el andamiaje descrito anteriormente es sustancialmente distinto al que establecía la Ley Núm. 28-1997, la cual disponía

---

[25]Las categorías son las siguientes: (1) el Ofensor Sexual Tipo I, quien estará sujeto al Registro por un término de quince años y tendrá que reportarse anualmente a la Comandancia de la Policía de Puerto Rico; (2) el Ofensor Sexual Tipo II, quien estará sujeto al Registro por un término de veinticinco años y tendrá que reportarse cada seis meses a la Comandancia de la Policía de Puerto Rico, y (3) el Ofensor Sexual Tipo III, quien estará sujeto al Registro de por vida y tendrá que reportarse cada tres meses a la Comandancia de la Policía de Puerto Rico. 4 LPRA sec. 536c.

de un término uniforme de 10 años para permanecer en el Registro. Asimismo, se descartó la posibilidad mediante la vía estatutaria de que, luego de transcurrido cierta cantidad de tiempo, la persona pudiese demostrar que se ha rehabilitado y que ya no representa un peligro para la sociedad. El único vestigio que queda es en el caso de Ofensores Sexuales Tipo I, los cuales podrán ser excluidos si, luego de diez años de tener su información en el Registro, la persona mantiene un récord negativo de antecedentes penales. Íd., sec. 536c. Sin embargo, esta oportunidad no está disponible para Ofensores Sexuales Tipo II y III. Como resultado de ello, la persona convicta como Ofensor Tipo III, quien estará sujeta al Registro de por vida, se presume eternamente peligrosa y nunca podrá demostrar lo contrario.

Destacamos también que el estatuto vigente provee que quienes incumplan con las normas de la Ley Núm. 266-2004 incurrirán en delito grave, estarán sujetos a una pena de reclusión de dos años y podrán ser sancionadas mediante multa de hasta $6,000. Íd., sec. 536h. La ley especifica que el tribunal tendrá discreción para imponer ambas penas. Íd.

## C.

Como hemos visto, la Ley Núm. 266-2004 tiene un propósito importante en nuestra sociedad y genera obligaciones significativas para las personas sujetas al Registro. Por tal razón, la determinación de la naturaleza del estatuto, a saber, si es civil o penal, es trascendental para delimitar la

aplicación retroactiva del Registro. Entre otros efectos, si el estatuto es civil y no tiene consecuencias punitivas, no se activa la prohibición de leyes ex post facto. Por otro lado, si es penal, se activa la protección constitucional junto a las demás garantías del Derecho Penal.

En todas las facetas estatutarias del Registro, la Asamblea Legislativa ha expuesto que su naturaleza es civil y no punitiva. 1997 Leyes de Puerto Rico 141, 143; 2004 Leyes de Puerto Rico 2013, 2016; 2011 Leyes de Puerto Rico 2786, 2788. En ese sentido, la Asamblea Legislativa ha sostenido que la finalidad del Registro no es un castigo, sino que su propósito es promover la seguridad y protección pública. Ello, obviamente no exime a la Rama Judicial de su deber de escudriñar e interpretar las consecuencias reales y el verdadero alcance del estatuto.

Como hemos explicado, la inclusión de la información de una persona convicta en el Registro se configura como una consecuencia de la comisión de un delito y se impone incluso como parte de la sentencia. Asimismo, se puede apreciar que el Registro genera consecuencias perjudiciales a la persona convicta ya que, luego de que ésta culmine el cumplimiento de su sentencia, se enfrenta a una medida de seguridad que le exige reportarse periódicamente ante la Policía de Puerto Rico y de proveer información personal para su publicación.

Además de las obligaciones y restricciones que emanan del Registro, la publicación de información personal y la

catalogación pública de ofensor sexual causa un gran perjuicio a las personas sujetas al mismo. Así lo reconocimos en Pueblo v. Hernández García, 186 DPR 656 (2012), donde este Tribunal abundó en las consecuencias que genera el Registro y razonó que "es evidente que una persona cuyo nombre aparece inscrito en el referido Registro se perjudica al sufrir el descrédito que implica ser identificado pública y constantemente como un ofensor sexual o maltratante de menores". Íd., págs. 675-676. Por tanto, destacamos que el estigma social que conlleva la aparición en el Registro produce consecuencias significativamente negativas en la persona convicta. Íd. Como corolario de lo anterior, sostuvimos que "es forzoso concluir que [el Registro] constituye una medida de seguridad que, aunque no surge de una ley penal, es impuesta como consecuencia del incumplimiento de una ley penal por parte de un ciudadano, medida de seguridad que recae como parte de su sentencia". Íd., pág. 677.

Concluimos, pues, que el Registro es una medida de seguridad que, a pesar de ser catalogada como civil por la Asamblea Legislativa, genera consecuencias "notablemente perjudiciales en el individuo a quien se le aplica". Íd., pág. 678. De esta manera, facilitamos que la aplicación de las medidas del Registro fuese conforme a las protecciones constitucionales y a las garantías penales. A raíz de ello, aplicamos el principio de favorabilidad que emana del Artículo 4 del Código Penal de Puerto Rico, supra, para reconocer el derecho de una persona convicta y posteriormente inscrita en el Registro a ser beneficiada por las disposiciones

de la Ley Núm. 243-2011, las cuales le favorecían más que las vigentes al momento de la comisión del delito. Íd., pág. 680.

**II**

A pesar de la normativa jurídica antes descrita, desafortunadamente una Mayoría de este Tribunal hoy resuelve que la Ley Núm. 266-2004, y por ende el Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores, es una medida civil. En consecuencia, concluye que las medidas del Registro no activan la protección constitucional en contra de las leyes ex post facto y valida su implementación retroactiva.

El 27 de agosto de 2003 el Sr. Efraín Ferrer Maldonado (señor Ferrer Maldonado o recurrido) hizo una alegación de culpabilidad producto de una alegación pre-acordada con el Ministerio Público, por la cual fue convicto de los delitos de actos lascivos sin minoridad y tentativa de violación conforme al Código Penal de 1974. Debido a lo anterior, la alegación pre-acordada y posterior sentencia del señor Ferrer Maldonado estaban sujetas a la Ley Núm. 28-1997, la cual disponía que tendría que mantener su información en el Registro por un período de diez años desde que comenzó a cumplir su sentencia bajo libertad a prueba. A raíz de ello, la información del señor Ferrer Maldonado debió ser excluida del Registro el 27 de agosto de 2013.

Obviando los pronunciamientos previos de este Tribunal y la protección constitucional en contra de leyes ex post facto que ampara a todas las personas, hoy una Mayoría de este Tribunal

opta por aplicar retroactivamente la Ley Núm. 266-2004. En consecuencia, el señor Ferrer Maldonado estará obligado a permanecer en el Registro por el resto de vida, sin oportunidad de demostrar su aptitud y capacidad de ser eliminado del Registro. De esta manera, la Opinión Mayoritaria despoja al señor Ferrer Maldonado de las protecciones básicas que provee la Constitución y el Código Penal, fomentando así la aplicación sin límites ni restricciones algunas de una medida que es una consecuencia directa de la comisión de un delito y de la imposición de una pena. Veamos.

**A.**

La Opinión Mayoritaria sostiene que el Registro constituye una medida civil, entre varias razones, porque así lo ha expresado la Asamblea Legislativa al aprobar las distintas etapas estatutarias del mismo. Asimismo, resalta que la Ley Núm. 243-2011 provee que, salvo ciertas disposiciones del estatuto, las demás podrán ser de aplicación retroactiva. 4 LPRA sec. 536 (Vigencia). Similarmente, una Mayoría de este tribunal alega que la norma que pauta es una extensión de Pueblo v. Hernández García arguyendo que, al identificar al Registro como una medida de seguridad, avalamos su caracterización como una medida civil. Sin embargo, esta conclusión es significativamente conflictiva y contradictoria con lo dispuesto en Pueblo v. Hernández García. Me explico.

Nuestros pronunciamientos en Pueblo v. Hernández García, supra, iban dirigidos precisamente a evitar que la caracterización legislativa del Registro como una de naturaleza civil obviara sus verdaderas consecuencias e impidiera que aplicáramos sus medidas conforme a los límites y garantías del Derecho Penal. En esa ocasión, una persona convicta bajo una ley derogada del Registro buscaba poder beneficiarse de una ley posterior que le favorecía, por lo que solicitó la exclusión de su información del Registro conforme a ese estatuto más reciente. Ante ese escenario, razonamos que el Registro era una medida de seguridad y aplicamos el principio de favorabilidad.[26] Por tanto, es evidente que, al aplicar una garantía propia del Derecho Penal al estatuto, este Tribunal interpretó que el Registro es punitivo. De haber entendido que la legislación era civil, lo que procedía era aplicar el Artículo 3 del Código Civil, supra, el cual establece que las leyes civiles tendrán efecto retroactivo cuando así lo manifieste expresamente la Asamblea Legislativa.

Del mismo modo, la Opinión Mayoritaria soslaya que nuestra caracterización del Registro en Pueblo v. Hernández García, supra, como una medida "impuesta como consecuencia del incumplimiento de una ley penal" que a su vez "recae como parte

---

[26]Para una discusión sobre la caracterización del Registro como una medida de seguridad, véase I.Y. Rosario Nieves, El fraude de etiquetas en la clasificación del registro de ofensores sexuales como "medida no punitiva", 85 Rev. Jur. UPR 169 (2016).

de su sentencia" nos llevan a la inevitable conclusión de que el Registro activa la protección contra leyes ex post facto. Íd., pág. 677. Como destacamos anteriormente, la determinación de lo que constituye una ley ex post facto debe basarse en sus efectos y consecuencias, analizando particularmente si resultan en un perjuicio para el acusado. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, op. cit. Consecuentemente, al haber sido enfáticos en los efectos negativos y significativos que produce el Registro en una persona convicta, es forzoso concluir que la protección constitucional en contra de leyes ex post facto impide su aplicación retroactiva. González v. E.L.A., supra.

Al obviar el cuadro normativo antes descrito, la Opinión Mayoritaria propone una solución confusa y contradictoria. Nótese la gran inconsistencia que una Mayoría de este Tribunal pretende generar con su dictamen: en Pueblo v. Hernández García resolvimos que el Registro solo aplica retroactivamente cuando el mismo le sea beneficioso a la persona convicta, mientras que en Pueblo v. Ferrer Maldonado determinan que el Registro siempre aplica retroactivamente, aunque tenga consecuencias contrarias a la protección constitucional. Esa consecuencia la catalogan como una extensión del precedente, pero ciertamente se trata de una revocación. Y más que una revocación de un precedente, nos encontramos ante una anulación de garantías estatutarias y constitucionales.

**B.**

Por otro lado, para apoyar una conclusión inconsistente y contradictoria a la pautada en Pueblo v. Hernández García, la Opinión Mayoritaria acude a jurisprudencia de los Estados Unidos y sostienten su postura al amparo del caso de Smith v. Doe, supra. En dicha jurisprudencia, la Corte Suprema de los Estados Unidos (Corte Suprema Federal) se enfrentó a una controversia muy similar al caso ante nos, a saber, dos personas convictas de delitos sexuales impugnaban la aplicación retroactiva del Alaska Sex Offender Registration Act (ASORA) por violar la protección constitucional en contra de las leyes ex post facto. Íd., págs. 91-92. A raíz de ello, la Corte Suprema Federal elaboró y abundó sobre el escrutinio aplicable a la determinación de la naturaleza de un registro de ofensores sexuales. Al aplicar dichos criterios al ASORA, estatuto que comprobaremos que es distinto al local, la Corte Suprema Federal concluyó que el mismo era de naturaleza civil y que, en consecuencia, no activaba la protección constitucional en contra de las leyes ex post facto.

No obstante, debemos recordar que, como es sabido, Smith v. Doe es de carácter persuasivo en nuestra jurisdicción al disponer del estándar mínimo constitucional. Al proveer únicamente el contenido mínimo, la Corte Suprema Federal no tuvo ante sí principios estatutarios propios de nuestro ordenamiento jurídico. Por tal razón, cuando resolvimos Pueblo v. Hernández García, optamos por no contemplar Smith v. Doe. Como expone la Profesora Iris Yaritza Rosario Nieves:

En cuanto a este aspecto, la actuación del Tribunal Supremo de Puerto Rico y su expresión de la aplicación del principio de favorabilidad, principio que se reconoce en la doctrina continental, pero no en la anglosajona y que por lo tanto, no contempló la opinión de Smith v. Doe, a las legislaciones del Registro se articula como un límite importante a la aplicación inmoderada de esta medida de seguridad. Puesto que el reconocimiento del Registro como tal, también conlleva a que dichas medidas puedan ser restringidas conforme al principio de legalidad y la prohibición de leyes ex post facto. I.Y. Rosario Nieves, El fraude de etiquetas en la clasificación del registro de ofensores sexuales como "medida no punitiva", 85 Rev. Jur. UPR 169, 184 (2016).

En consecuencia, al interpretar y aplicar los criterios persuasivos pautados por la Corte Suprema Federal, múltiples jurisdicciones estatales han reconocido la naturaleza punitiva de este tipo de registro. De hecho, eventualmente la Corte Suprema de Alaska resolvió que el ASORA es de naturaleza punitiva conforme a su ordenamiento constitucional estatal. Doe v. State, 189 P.3d 999, 1019 (2008). Similarmente, al aplicar las guías de Smith v. Doe al Registro vigente en Puerto Rico, también procedía concluir que es una medida con consecuencias punitivas, a diferencia de la aplicación contenida en la Opinión Mayoritaria. Veamos.

En Smith v. Doe, la Corte Suprema Federal razonó que la naturaleza civil o criminal de los estatutos se examina a base de un escrutinio que contiene dos pasos. Íd., pág. 92. Primeramente, las cortes deben auscultar si se expuso en el estatuto expresa o implícitamente la naturaleza de la sanción impuesta. Íd. (citando

a <u>Kansas v. Hendricks</u>, supra). Si de la legislación emana que su propósito era punitivo, culmina el análisis. Íd. Si, por el contrario, surge que la intención legislativa era que la regulación o sanción fuese civil, las cortes deben examinar a mayor profundidad el estatuto para determinar **si el propósito o los efectos de la ley son tan punitivos que superan o anulan la intención legislativa de que se caracterice la misma como civil.** Íd. (citando a <u>Kansas v. Hendricks</u>, supra; <u>United States v. Ward</u>, supra). En este segundo criterio, se requiere una "prueba más clara" de que el propósito y los efectos de la ley son punitivos para así poder fundamentar la invalidación de la intención legislativa. Íd. (citando a <u>Hudson v. United States</u>, 522 US 93, 100 (1997); <u>United States v. Ward</u>, supra, pág. 249). Particularmente, el análisis del segundo paso del escrutinio se basa en el estudio de cinco factores que se deben examinar en conjunto y a la luz de las circunstancias de cada caso ya que, de por sí, los criterios no son dispositivos ni concluyentes.[27] Íd., pág. 97 (citando a <u>United States v. Ward</u>, supra).

---

[27]Los criterios que se contemplan en el segundo paso del escrutinio provienen de <u>Kennedy v. Mendoza Martínez</u>, 372 US 144 (1963). En dicho caso, se elaboran siete factores. Íd., págs. 168-169. Sin embargo, estos elementos se han utilizado para analizar distintas controversias constitucionales, desde temas de doble exposición hasta de derecho a asistencia de abogado. <u>Smith v. Doe</u>, 538 US 84, 97 (2003). Por tanto, en <u>Smith v. Doe</u> la Corte Suprema de los Estados Unidos interpretó que en el análisis de la protección constitucional en contra de leyes <u>ex post facto</u> con relación a un registro de ofensores sexuales solo son relevantes cinco de esos siete factores. Íd. Los otros dos factores – si la ley opera una vez se establece culpa (<u>upon</u>

Al igual que en United States v. Ward, en la controversia ante nuestra consideración surge con claridad que la Asamblea Legislativa fue expresa en su intención de catalogar al Registro como una medida civil. Por tanto, procedemos al segundo paso del escrutinio esbozado en Smith v. Doe y sus antecesores.

### 1. Medida históricamente considerada como castigo

En primer lugar, debemos auscultar si la medida se ha considerado históricamente como un castigo. Íd., págs. 97-99. En el análisis de este primer criterio, la Corte Suprema Federal abundó sobre el estigma social y los obstáculos que genera catalogar a una persona como ofensor sexual. Particularmente, expuso que "[t]he publicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism". Íd, pág. 99. A pesar de ello, la Corte Suprema Federal concluyó que el ASORA no constituye un castigo a esos fines porque el estatuto era de reciente aprobación y que no generaba medios tradicionales de castigo.

No obstante lo anterior, en Pueblo v. Hernández García este Tribunal reconoció expresamente que esas consecuencias impiden la caracterización de nuestro Registro como una medida civil. Es decir, sean esas consecuencias intención o no de la Asamblea Legislativa, son los efectos del estatuto. A raíz de ello,

---

finding of scienter) y si el estatuto aplica a conducta considerada como un delito – son de poco peso y redundantes ante la naturaleza de un registro. Íd., pág. 105.

optamos por no hacer caso omiso a esas consecuencias reales, palpables y negativas e identificarlas por lo que son: una medida punitiva que continúa generando consecuencias negativas para la persona que cometió un delito.[28]

En torno a ello, la Opinión Mayoritaria despacha este primer criterio simplemente porque "desde la primera ley aprobada, no se ha considerado como una actuación de índole punitiva por parte del Estado". No obstante, la intención de la Asamblea Legislativa no dispone de la interrogante que presenta el primer factor. Precisamente, este segundo paso del escrutinio es un requerimiento para ir más allá de la intención de la Asamblea Legislativa. Así, pues, debemos examinar si la divulgación de información personal para el conocimiento público, la obligación periódica de reportarse personalmente ante las autoridades gubernamentales y las múltiples consecuencias que el Registro genera se han considerado históricamente en Puerto Rico como una medida punitiva.

En esta encomienda, al examinar algunos de los programas alternativos del cumplimiento de penas en Puerto Rico, encontramos que el Registro es significativamente similar a los mismos. A modo de ejemplo, la Ley de sentencia suspendida y

---

[28]Para una discusión sobre la relación entre las consecuencias del Registro y las penas infamantes, véase C. Navarro Motta, El etiquetamiento producido por el registro y la notificación comunitaria de ofensores sexuales y su efecto sobre el proceso de rehabilitación y reintegración social en Puerto Rico, 4 Rev. Clave, Rev. Estudios Críticos Der. 219 (2015).

libertad a prueba provee un mecanismo mediante el cual los tribunales pueden suspender una sentencia de reclusión en una institución penal y ordenar el cumplimiento de la pena mediante la libertad a prueba. Ley Núm. 259 de 3 de abril de 1946, según emendada, 34 LPRA secs. 1026-1028. Particularmente, el estatuto especifica que la persona convicta que cumple su sentencia mediante la libertad a prueba se somete a la supervisión de la Administración de Corrección. Íd., sec. 1028. Similarmente, la Ley Núm. 266-2004 provee que las personas obligadas a someter su información para la publicación en el Registro estarán sujetos a la supervisión de la Policía de Puerto Rico. 4 LPRA sec. 536c. Por tanto, ambos estatutos disponen que la persona convicta está sujeta a la supervisión de autoridades gubernamentales.

Del mismo modo, la persona que incumple con la Ley de sentencia suspendida y libertad a prueba, supra, o que se considere "incompatible con la debida seguridad de la comunidad" está sujeta a que el tribunal revoque su libertad y ordene su reclusión en una institución penal. 34 LPRA sec. 1029. De forma muy parecida, la persona convicta que incumpla con lo exigido por el Registro comete un delito grave y se enfrenta a la posibilidad de dos años de reclusión y al pago $6,000 en multa. 4 LPRA sec. 536h. Es decir, ambas leyes establecen sanciones de reclusión ante el incumplimiento con sus disposiciones.

Consecuentemente, si las exigencias de la Ley Núm. 266-2004, tal como la obligación de estar sujeto a la supervisión

de un ente gubernativo y la sanción de reclusión por incumplimiento, se contemplan **actualmente** en otro estatuto con consecuencias penales, es evidente que en Puerto Rico esta medida se considera punitiva.

**2. Restricciones que genera la medida en las personas sujetas a la misma**

El segundo criterio elaborado en Smith v. Doe requiere analizar si la Ley Núm. 266-2004 genera discapacidades o restricciones a la persona obligada a incluir su información en el Registro. Smith v. Doe, supra, págs. 99-102. Para ello, la Corte Suprema Federal explica que debemos evaluar "how the **effects** of the Act are **felt** by those subject to it". (Énfasis suplido). Íd. En consideración de este criterio, la Corte Suprema Federal razonó, entre varios argumentos, que el hecho de que el ASORA no requiriera la comparecencia física de las personas convictas a las autoridades apoyaba la conclusión de que el estatuto no generaba una restricción o incapacidad significativa. Íd., pág. 101. No obstante, a diferencia del ASORA, el Registro de Puerto Rico sí exige la comparecencia física de las personas convictas cada vez que deben reportarse ante la Policía de Puerto Rico. 4 LPRA sec. 536c.

La Corte Suprema Federal también resolvió que el ASORA no se podía considerar punitivo porque el mismo no generaba un obstáculo real a la capacidad de las personas convictas a obtener un empleo y vivienda. Smith v. Doe, supra, pág. 100. Al llegar a esta conclusión, descansa en la premisa de que los

patronos y los arrendatarios podrían conllevar un <u>background</u> <u>check</u> que expondría los delitos cometidos por la persona convicta, lo cual no depende del ASORA. Íd.

Sin embargo, cuando acudimos al contexto de Puerto Rico, observamos que la expedición de los certificados de antecedentes penales, lo cual es el equivalente a un <u>background check</u>, sí depende directamente del Registro. La <u>Ley de certificado de</u> <u>antecedentes penales de Puerto Rico</u> establece que las personas convictas de delitos podrán solicitar la eliminación de su convicción de dicho certificado. Ley Núm. 254 de 27 de junio de 1974, según enmendada, 34 LPRA secs. 1725-1725e. Las condiciones para ello dependerán de la naturaleza del delito, a saber, si es un delito menos grave, podrá solicitar la exclusión al paso de los seis meses desde el cumplimiento de su sentencia y si es un delito grave, podrá solicitarla a los cinco años desde el cumplimiento de su sentencia. Íd., secs. 1725a-1-1725a-2. Sin embargo, el estatuto prohíbe expresamente la expedición de dicho certificado a personas incluidas como ofensores sexuales en el Registro. Íd., sec. 1725a-2.

Del mismo modo, la <u>Ley de certificado de antecedentes</u> <u>penales de Puerto Rico</u> contempla una alternativa para personas convictas que aún no hayan cumplido con los correspondientes términos de seis meses o cinco años. En estos casos, la ley permite que se les provea un "certificado de rehabilitación y capacitación para **trabajar**, que podrá sustituir, el certificado de buena conducta". (Énfasis suplido). Íd., sec. 1725. El

estatuto nuevamente descarta esta alternativa para las personas cuya información aparece en el Registro, quienes tampoco tendrán acceso a ese certificado provisional que la misma Asamblea Legislativa reconoce que es imperativo para la obtención de un empleo. Íd.

Por tanto, a la luz de nuestro ordenamiento, el certificado de antecedentes penales, que es una herramienta vital para la adquisición de derechos fundamentales como la vivienda y el empleo, está directamente entrelazado con el Registro. Es decir, una persona que cometió un delito grave, en cualquier otra circunstancia, podrá solicitar la exclusión de su convicción del certificado en un término de cinco años desde el cumplimiento de la pena. Sin embargo, si su información está incluida en el Registro, la única manera que la persona convicta podrá obtener el certificado es si, a su vez, es eliminado del Registro. Consecuentemente, impedir el acceso a dicho certificado por quince años, veinticinco años, o hasta perpetuamente, constituye un obstáculo afirmativo y palpable que incide directamente en la capacidad de las personas convictas de delitos sexuales a rehabilitarse y a reintegrarse en nuestra sociedad. Una vez más, podemos observar que los efectos que tiene el Registro en las personas sujetas a él son significativos y punitivos.

Por otro lado, una Mayoría de este Tribunal interpreta, sin más, que el Registro no impone una restricción afirmativa a la persona sujeta al mismo porque las obligaciones que impone no

son similares "a la pena de encarcelamiento o alguno de los mecanismos de sentencia diferida". Sin embargo, "la severidad de una restricción o de una incapacidad no puede ser medida meramente a base de la restricción mayor que es la pérdida de la libertad física, ya que, a través de la historia, han existido sanciones que no porque priven de la libertad física dejan de ser menos severas". J. Ramírez Vélez, El registro de personas convictas por delitos sexuales y abusos contra menores: ¿Seguridad o castigo?, 42 Rev. Jur. UIPR 337, 373 (2008).

Asimismo, en la discusión del criterio anterior expusimos precisamente las similitudes que ostenta el Registro y sus medidas en comparación con un método de sentencia suspendida como lo es el sistema de libertad a prueba. Además, la Opinión Mayoritaria tampoco elabora un análisis realista de las restricciones que puede generar el Registro en una persona convicta que desee reintegrarse a la sociedad como lo sería el impedimento para obtener un certificado de antecedentes penales, como expusimos anteriormente.

### 3. Medida promueve los fines tradicionales del castigo

En tercer lugar, debemos auscultar si la medida promueve los fines o propósitos tradicionales de castigo. Smith v. Doe, supra, pág. 102. En esta encomienda, la Corte Suprema Federal reconoció que el ASORA imponía obligaciones y restricciones a las personas convictas según la gravedad de sus delitos. En

consecuencia, el esquema estatutario estaba basado en el fin tradicional punitivo de castigar según la naturaleza del crimen. A pesar de ello, la Corte Suprema Federal concluyó que el andamiaje también respondía razonablemente a intereses de seguridad pública. Íd.

Ahora bien, el Registro de nuestro ordenamiento, provee distintos términos por los cuales la persona convicta estará sujeta al Registro. 4 LPRA secs. 536(8)-(10). Similar a una medida punitiva, estos términos dependerán de la naturaleza y gravedad del delito que la persona ya cometió.

Asimismo, es menester destacar que previamente el Registro disponía de un procedimiento alterno y especifico para atender los casos de reincidentes. La Ley Núm. 28-1997 exigía que, una vez el tribunal tuviese ante su consideración una persona reincidente, éste debía hacer un examen minucioso de las circunstancias de la persona convicta para auscultar sobre su posible reincidencia futura y sobre la magnitud del riesgo que representara para la sociedad. 1997 Leyes de Puerto Rico 141, 147. Para ello, se podía presentar prueba documental y testimonio de profesionales de la salud. Si la prueba demostraba un riesgo significante para la sociedad, el tribunal podía ordenar la inclusión perpetua de una persona reincidente en el Registro. No obstante, incluso hasta en esas instancias, se permitía que las personas demostraran su rehabilitación para poder ser excluida del Registro luego del transcurso de diez años. Íd.

Es decir, el estatuto previo estaba estrechamente dirigido a evitar la reincidencia de crímenes sexuales. En ese sentido, la inclusión del Registro era ordenada siempre y cuando la persona representara un riesgo para la sociedad. A esos efectos, el estatuto proveía un andamiaje acertado que le permitía a las personas demostrar su rehabilitación y capacidad de ser reintegrada a la sociedad.

Sin embargo, como explicamos anteriormente, la Ley Núm. 243-2011 descartó el referido procedimiento. Por tanto, "se abandonó completamente el criterio de la reincidencia como factor determinante de peligrosidad y se abrazó la idea de que el riesgo del sujeto está definido por su conducta delictiva pasada". Rosario Nieves, supra, pág. 184. En consecuencia, el estatuto va únicamente dirigido a penalizar conducta delictiva, según la gravedad y naturaleza del crimen cometido, conforme a la típica naturaleza de un estatuto penal.

### 4. Medida tiene un propósito no punitivo legítimo

El cuarto factor que procedemos a examinar es si la medida en controversia está razonablemente relacionada con un propósito no punitivo legítimo. Smith v. Doe, supra, pág. 102. Según se desprende de Smith v. Doe, se tendría que demostrar que el propósito no punitivo del estatuto es una ficción o mero pretexto. Íd., pág. 103 (citando a Kansas v. Hendricks, supra, pág. 371 (Kennedy, J., opinión concurrente)).

En el caso de autos, la Opinión Mayoritaria destaca la importancia de la finalidad del Registro de prevenir la reincidencia de delitos sexuales, en aras de garantizar la seguridad y protección de la ciudadanía. Ello, bajo la premisa de que el Registro tiene un fin no punitivo legítimo.

Ciertamente, no cuestiono que la Asamblea Legislativa tiene un interés legítimo en promover la seguridad pública. Ahora bien, es evidente que el Registro nace de un interés preventivo, pero también de intereses punitivos y retributivos. Así se reconoció en una de las Opiniones Disidentes de Smith v. Doe, supra, mediante la cual se expone que:

> Ensuring public safety is, of course, a fundamental regulatory goal, and this objective should be given serious weight in the analyses. But, at the same time, it would be naive to look no further, given pervasive attitudes toward sex offenders. The fact that the Act uses past crimes as the touchstone, probably sweeping in a significant number of people who pose no real threat to the community, serves to feed suspicion that something more that regulation safety is going on; when a legislature uses prior convictions to impose burdens that outpace the law's stated civil aims, **there is room for a serious argument that the ulterior purpose is to revisit past crimes, not prevent future ones.** (Citas omitidas). (Énfasis suplido). Íd., págs. 108-109.

Como explicamos anteriormente, el andamiaje del Registro está diseñado para imponer ciertas restricciones y obligaciones que dependen directamente de la naturaleza y gravedad del delito cometido. Por tanto, además de la seguridad pública, hay un interés palpable de castigar por conducta delictiva pasada. Como

expone la Profesora Cristina Fernández-Pacheco Estrada, la convergencia de los fines preventivos y retributivos no puede ser obviada, "dado que la duración de la obligación de registro depende de la gravedad de los hechos cometidos y no del riesgo de reincidencia". C. Fernández-Pacheco Estrada, Registros de delincuentes sexuales y prevención del delito: Análisis de la experiencia estadounidense, 34 Estudios Penales y Criminológicos 383, 407 (2014). En consecuencia, no estamos meramente ante una legitimidad no punitiva, sino también ante un interés punitivo por lo que, en el contexto de la controversia ante nos, resulta incuestionable que la aplicación retroactiva de la medida tiene un efecto que no encuentra amparo en las garantías constitucionales discutidas en esta Opinión.

**5. Proporcionalidad de las disposiciones de la medida con relación a su propósito no punitivo**

El quinto criterio nos invita a determinar si las medidas del Registro son excesivas en cuanto al propósito no punitivo de este. Smith v. Doe, supra, págs. 102-103. En torno a este criterio, la Opinión Mayoritaria razona que "[e]l interés del Estado en garantizar la protección de los sectores más vulnerables ante la reinserción en la sociedad de las personas convictas por delitos de abuso sexual tiene que prevalecer frente a cualquier incomodidad o estigma social que un ofensor sexual pueda sufrir".

Como expuse en el criterio anterior, reconozco que el Registro tiene una finalidad importante de garantizar la seguridad y protección de nuestra sociedad. Sin embargo, no concurro con el razonamiento de que las obligaciones y consecuencias que genera en la persona convicta incluida en el Registro son meramente colaterales a ese propósito ni que las mismas se reducen a meras "incomodidades".

Como hemos explicado, el Registro obliga a las personas convictas a reportarse periódicamente a la Policía de Puerto Rico y les impone la publicación de amplia información personal, lo cual los expone a ser severamente estigmatizados. Asimismo, el Registro impide el acceso a un certificado de antecedentes penales, lo que representa un obstáculo significativo en su reinserción a la sociedad. De igual forma, establece términos por los cuales estarán incluidas las personas en el Registro que son conforme a la naturaleza del delito y no con su posible reincidencia en el futuro.

Asimismo, la Ley Núm. 266-2004 tampoco contempla de manera alguna el mandato constitucional de la rehabilitación y abandona cualquier oportunidad de la persona convicta de demostrar que es merecedor de ser eliminado del Registro. Como se expuso en una de las Opiniones Disidentes de Smith v. Doe, supra, el Registro "makes no provision whatever for the possibility of rehabilitation: Offenders cannot shorten their registration or notification period, even on the clearest demonstration of rehabilitation or conclusive proof of physical incapacitation".

Íd., pág. 117 (Ginsburg, J., opinion disidente). Debido a lo anterior, entiendo que las medidas del Registro exceden su finalidad civil y convierten el Registro en una medida punitiva. No olvidemos que eventualmente ese fue el destino del propio ASORA. Doe v. State, supra.

## C.

Consecuentemente, concluyo que las medidas del Registro y sus consecuencias invalidan la pretensión legislativa de catalogarlo como una medida civil. Por ello, opino que no debe proceder la aplicación retroactiva del Registro. Al así hacerlo, actuamos en contravención a la protección constitucional ex post facto.

De igual forma, debemos recordar que el señor Ferrer Maldonado realizó una alegación pre-acordada con el Ministerio Público, recogida mediante sentencia final y firme del foro primario. Al hacer alegación de culpabilidad, el estado de Derecho disponía que, como parte de las consecuencias punitivas, el recurrido figuraría en el Registro por un término de diez años, conforme a la Ley Núm. 28-1997. Sin embargo, la Opinión Mayoritaria valida que las condiciones y el derecho vigente al momento de la sentencia varíen en un futuro, en contravención a la prohibición constitucional.

Finalmente, es menester destacar que me parece peligroso que la Opinión Mayoritaria tome en consideración los hechos delictivos alegados, los cuales no forman parte de la alegación

pre-acordada y posterior convicción. Al igual que la Mayoría, repudio los delitos cometidos por el señor Ferrer Maldonado. Empero, los delitos y actos abominables no pueden conducir a la negación de los derechos estatutarios y constitucionales que cobijan a **todas** las personas, incluyendo aquellas que cometen delitos repudiables.

**III**

Por entender que el <u>Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores</u> es una medida punitiva que debe ser aplicada conforme a las protecciones constitucionales y garantías penales aquí discutidos, respetuosamente disiento.

Luis F. Estrella Martínez
Juez Asociado